## RESPONSIBILITY FOR FAILURE OF AN APPLIANCE SOLD.

Common Pleas Court of Hamilton County.

THE TALGE MAHOGANY CO. v. JOHN N. QUINN.[*]

Decided, July, 1917.

*Sales—Seller Not Responsible for Inefficiency of Appliance Sold— Where it is Within the Power of the Buyer and not the Seller to Remedy the Defect—Charge of Court with Reference to Nature of Contract of Sale.*

1. Where inefficiency of a mechanical appliance sold was due to causes beyond control of the seller and wholly under control of the buyer and not removable without his consent, although the changes could have readily been made by him, the responsibility of the failure of the appliance rests upon the buyer and not upon the seller.

2. A statement in the charge to the jury, which seemed to restrict them to an implied contract of sale, is not sufficiently prejudicial to warrant a reversal, where testimony had been introduced tending to show an express contract and the jury were left to determine whether the work the appliance was expected to do was covered by an express or an implied contract, and the charge as a whole was more favorable to the buyer than the seller.

*Cogan, Williams & Ragland* and *H. A. Reeve,* for plaintiff in error.

*Burch, Peters & Connolly* and *W. D. Murphy,* contra.

COSGRAVE, J.

This cause comes on to be heard upon a petition in error from the municipal court of the city of Cincinnati, seeking the reversal of a judgment of that court rendered in behalf of the plaintiff, who is now the defendant in error.

There are three principal errors complained of:

1. That the verdict is clearly against the evidence and contrary to law.

*Reversed in part, *Talge Mahogany Co. v. Quinn,* 29 O.C.A., —.

2. Exclusion of evidence concerning an express warranty and holding that an express warranty can not exist at the same time with an implied warranty.

3. That the court erred in its charge to the jury.

The action was brought in the court below by the John N. Quinn Co., who hereinafter will be called the seller, against the Talge Mahogany Co., hereinafter called the buyer. The action was for the recovery of the price of an appliance known as a "Dutch oven," installed by the seller in the plant of the buyer at Indianapolis. The seller recovered a judgment below in the sum of $648.04.

The bill of exceptions in this case covers nearly three hundred pages, and the court will not attempt to review the bill in detail, but rather to give its own deductions from a careful reading of all the evidence.

Negotiations leading to the sale of this "Dutch oven" commenced on August 31, 1912, when the seller wrote to the buyer informing him that Mr. Seibert, of the Smith, Myers & Schnier Co., of Cincinnati, had informed them that the Talge Co. would probably be a buyer for a flat top furnace. The letter called the proposed buyer's attention to the appliance he was selling and gave by way of reference, C. A. Garnady, of Greencastle, Crane & Co., of Cincinnati, and I. J. Ruth, of Poplar Bluff, Missouri, suggesting that the buyer write to these parties as to the satisfaction the "Dutch oven" had given in their respective plants, and suggesting further that the seller would have their Mr. Quinn go to Indianapolis and talk the matter over with the proposed buyer, if the proposed buyer so desired.

It appears that the seller and the buyer had several interviews at Indianapolis before and after the sale and the installation of the "Dutch oven." These interviews were in response to a request on the part of the buyer that the seller come to their plant and give an outline and an estimate and explain the facts concerning said oven. It appears that the "Dutch oven" is an attachment to the furnace under the boiler and is supposed to lessen the amount of fuel to be used, and likewise to increase the steam capacity of the boilers.

Following the interviews between the buyer and the seller, the "Dutch oven" was in stalled, and some time thereafter the buyer complained that it was not accomplishing what he had been led to believe would be accomplished. It appears from the evidence that the buyer was thoroughly familiar with what was known as a Dutch oven''; that he had seen them in use and operation; that he was a man of experience in handling boilers and furnaces, so that it may be concluded that each was dealing with the other at arm's length.

The preponderance of the evidence seems to indicate that the installation of this oven did not produce the results that the buyer anticipated. It thus became a question whether or not this failure was due to the fault of the seller or to the fault of the buyer. Many witnesses testified in the court below, with the not unusual conflict that happens in the trial of strongly contested cases.

It was claimed on the one hand that the failure was due to certain causes which the buyer could obviate by a rearrangement and by making some changes in the boiler room which the buyer refused to do. The preponderance of the evidence would seem to sustain the contention that if these changes were made as demanded by the seller, and which he could not make on the premises of the buyer without the consent of the buyer, the appliance that he had sold would work successfully. Expert witnesses in matters of this kind testified on both sides, and while there was a conflict of testimony not altogether easily reconciled, yet this court on a careful review of all the evidence is impelled to the conclusion that the verdict was not against the manifest weight of the evidence. The court below may have correctly reasoned that if the inefficiency of the appliance was due to causes beyond the control of the seller, but subject to the control of the buyer and not removable and remediable without his consent, which he refused to give, though such removal could be readily made, then the responsibility for the failure should be imposed upon the buyer and not upon the seller.

Exception is taken to the charge of the trial court on the question of an express and implied contract. It is true that the

court said in the opening part of his charge to the jury that he would restrict them to the consideration of whether there was an implied contract. Notwithstanding this, the court below during the trial admitted testimony tending to show an express contract, and in the charge itself by way of implication submitted to the jury the question of whether or not the appliance was fitted to do the work for which it was purchased, thus leaving to the consideration of the jury whether the work which it was to accomplish was by virtue of an express or an implied contract: Taking the charge in its entirety it would appear to be more favorable to the buyer than to the seller, and it would not seem in any wise to have been prejudicial to the buyer, but rather to the seller.

The attention of the court has been called to the alleged errors in the admission and rejection of testimony, but it is unable to say that any of these errors, if such they were, were of a character prejudicial to the seller.

Upon a review of all the questions of fact and questions of law the court is of the opinion that there was no error in the proceeding below prejudicial to the plaintiff in error in this case, and the judgment of the court below is hereby affirmed.